FILED & JUDGMENT ENTERED
Steven T. Salata

Jan  28  2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy Case No. 11-32345 |
| | ) | Chapter 7 |
| BRIAN JOSEPH SPIERS, | ) | |
|           Debtor. | ) | |
| | ) | |
| JOHN W. TAYLOR, Trustee for the | ) | Adversary Pro. No. 12-3211 |
| Bankruptcy Estate of Brian Joseph Spiers, | ) | |
| | ) | |
|           Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BRIAN JOSEPH SPIERS, | ) | |
|           Defendant. | ) | |

**ORDER DENYING DEBTOR'S DISCHARGE, GRANTING THE TRUSTEE'S REQUEST TO SURCHARGE DEBTOR'S EXEMPTIONS, GRANTING DEBTOR'S REMAINING EXEMPTIONS, AND APPROVING DEBTOR'S MOTION TO PAY FEES FROM EXEMPT ASSETS**

THIS MATTER came on for trial Wednesday November 14, 2012 on the Trustee's Objection to Discharge under 11 U.S.C. §727, on the Trustee's Objection to Debtor's Exemptions, and on Debtor's Motion for Authorization to Pay Post-Petition Attorneys Fees from Exempt Assets.  Stephanie E. Richmond appeared on behalf of the Trustee.  Sean Thomas Dillenbeck appeared on behalf of the Debtor.

1

The Court, having considered the pleadings, the evidentiary record in this case, and the arguments of counsel, **DENIES** Debtor's Discharge, **GRANTS** Trustee's request to surcharge Debtor's exemptions for the amount owed to the estate, $69,583.65. **GRANTS** the remainder of Debtor's exemptions, and **GRANTS** Debtor's motion to pay post-petition attorneys fees from these exempt assets.

## PROCEDURAL HISTORY

Spiers filed a voluntary Chapter 7 bankruptcy petition on September 9, 2011 in the United States Bankruptcy Court for the Western District of North Carolina. (Bankruptcy case no. 11-32345). John W. Taylor is the duly appointed and acting Chapter 7 Trustee ("Trustee") of Spiers' bankruptcy case. On June 25, 2012, the Trustee filed an Ex Parte Motion for Order for Show Cause Against Spiers (ECF No. 66) and on June 26, 2012, the Court entered an Order granting the Ex Parte Motion for Show Cause (ECF No. 68). On July 30, 2012, the Trustee filed his Supplemental Motion for Show Cause (ECF No. 89) (the Ex Parte Motion for Show Cause and the Supplemental Motion for Show Cause Against Spiers are collectively referred to as the "Show Cause Motions"). Also on July 30, 2012, Spiers filed a Motion to Amend his Exemptions (ECF No. 91) to which the Trustee objected. On September 7, 2012, Spiers filed a Motion to Pay Post-Petition Attorney's Fees from Exempt Assets (ECF No. 124) and on September 17, 2012, the Trustee filed an Objection to Spiers' Exemptions, *in toto* (ECF No. 135) (the "Objection to Exemptions"). On September 7, 2012, the Trustee filed an adversary proceeding objecting to Spiers' Discharge. (Adv. Pro. No. 12-3211).

On September 20, 2012 a hearing was held where at the parties agreed that the Show Cause Motions, Motion to Pay Fees, Objection to Exemptions, and the Objection to

Discharge would be heard and tried in a consolidated proceeding on November 14, 2012. Finally, the Court granted Spiers' Motion to Amend Exemptions at the September 20, 2012 hearing and Spiers' filed his proposed Amended Schedule C November 12, 2012. The Trustee filed his objection on November 13, 2012. (ECF No. 166).

On September 25, 2012, the Trustee amended his Objection to Discharge to include certain monetary claims against Spiers. On October 31, 2012, Spiers filed his answer to the Objection to Discharge and admitted to all the allegations contained in the Amended Complaint Objecting to Discharge with the exception of paragraph 16, that he has not produced any documents related to the sale of the Harley, paragraph 38c, that he failed to disclose his ownership of sterling silver, and paragraph 47, that he failed to provide the Trustee with a list of documents.

At the beginning of the trial on November 14, 2012, counsel for Spiers stipulated to the use of the 2004 Examination transcripts of Randal Wolf, Jeffrey Owen, and Brian Spiers for all substantive purposes at trial rather than calling the witnesses to testify. Spiers also waived his claim to the additional exemptions he listed on his amended schedule filed November 12, 2012 with the exception of his interest in the Ford F-150. Spiers is only attempting to claim his original exemptions plus his interest in the truck. The Trustee objects to both.

At the end of the trial on November 14, 2012, the Court GRANTED Debtor's Motion to pay attorneys fees out of any exempt assets that Spiers might still be entitled to keep.

An order was issued on December 12, 2012 directing the Trustee to submit additional evidence relating to the objection to Spiers' exemptions, in particular, a

3

declaration of his additional costs and fees made necessary by Spiers' misconduct. The Trustee's declaration, filed December 12, 2012, sets forth an additional $65,598.50 in attorney's fees and an additional $4,255.14 in expenses, for a total of $69,853.65 in additional costs. The parties stipulated that this will be included in the evidentiary record.

## STATEMENT OF FACTS

The Trustee seeks denial of Spiers' discharge, exemptions, and monetary relief on the grounds that he intentionally failed to disclose numerous assets and transfers of assets he owned or had an interest in at the time of the filing of the bankruptcy petition, attempted to suborn perjury from another witness, did not produce documents requested by the Trustee in a timely manner, failed to cooperate with the Trustee's requests, and forced the Trustee to expend a substantial amount of time and resources in attempting to obtain an accurate portrayal of his finances and to recover for the benefit of his creditors.

The salient facts are not in dispute. Spiers engaged in several fraudulent acts in regard to his bankruptcy case, including the following:

1. At the time of the filing of the bankruptcy petition, Spiers was the owner of a restored 1964 Buick Electra (the "Electra"); however, in his Statement of Financial Affairs, Spiers falsely stated that he sold the Electra to Jeff Owen prior to bankruptcy: "Debtor sold 1964 Buick Electra in May 2009 for $4,000 to satisfy a debt owed to Mr. Owens. $4,000 was the value." (ECF No. 1) On January 4, 2012, the Trustee conducted a 2004 examination of Spiers in which he again testified under oath that he sold the Electra to Jeff Owen prior to his bankruptcy. (2004 Exam Tr. of Brian Joseph Spiers 20, ECF No. 95) On June 14, 2012, the Trustee conducted a 2004 examination of Jeff Owen and

4

Mr. Owen refuted Spiers' statements indicating:

    a. He did not loan money to Spiers. (2004 Exam Tr. of Jeffrey Owen, 9 ECF No. 169).

    b. He did not purchase the Electra from Spiers. (*Id.* at 9).

    c. At the request of Spiers, he allowed the Electra to be stored in his mother's garage. (*Id.* at 7).

    d. He had Spiers remove the Electra from his mother's garage a couple of months ago. (*Id.* at 8).

    e. Spiers contacted Mr. Owen prior to his 2004 examination and asked to meet with him so they could exchange $4,000.00 so that Owen would not have to lie in court. (*Id.* at 12-13).

Spiers now affirms Owen's account of these events.

    2. On July 10, 2012, approximately ten months after filing his bankruptcy, Spiers disclosed for the first time that he owned a BMW KT1200 motorcycle (the "BMW").

    3. In addition to the Electra and BMW, in his Statement of Financial Affairs, Spiers falsely stated that he sold his 2001 Harley Davidson motorcycle (the "Harley") to his brother, Michael Spiers, in October 2009 for $6,000. After the 2004 Examination of Spiers, the Trustee requested the information related to the sale of the Harley. In July of 2012, Spiers produced a cancelled check for $3,337 from Michael Spiers, purportedly for the sale of the Harley. Actually, the Debtor still owned the Harley Davidson at the date he declared bankruptcy. Rather than selling the motorcycle in 2009, in an equitable distribution Consent Order filed January 31, 2011, in Union County, North Carolina, the state court awarded the Harley Davidson motorcycle "which he currently operates" to

Spiers.

4. At the filing date, Spiers had an equity interest in Flint Business Center, LLC, Lansing Business Center, LLC, and S&W Supplies, LLC. These interests were not disclosed in his bankruptcy petition. During the course of his 2004 Examination, Spiers was questioned by the Trustee about his business interests. Again, he only disclosed those businesses previously listed in his bankruptcy schedules and concealed his interests in these three other businesses. When asked whether he had an interest in any other businesses in the last four years other than those discussed in the 2004 Examination, Spiers testified that he did not. (2004 Exam Tr. of Brian Joseph Spiers 44, ECF No. 95).

5. Spiers also had an indirect interest in a bank account with Bank of America known as S&W Supplies, LLC, and ending in xxx3464. This account was similarly not disclosed in his bankruptcy schedules. The documents produced by Randall Wolf, part owner of S&W and a signatory on the account, in response to a subpoena duces tecum included bank statements for the S&W Supplies, LLC account. According to the September 2011 account statement, the S&W Supplies account contained $16,354.69 on the date Spiers filed bankruptcy. At his 2004 Examination, Randall Wolf testified that he only used the S&W Supplies, LLC account to pay his monthly health insurance, which costs approximately "$985 or $935" (2004 Exam Tr. of Randall Wolf 41, ECF No. 96). Wolf also testified that:

   a. Other than making deposits and paying health insurance, Spiers was the only other person that used the account. (*Id.* at 42).

   b. Spiers used the money as he wanted to use it and Wolf used it solely as the insurance account. (*Id.* at 45).

    c. Spiers used the funds for personal purposes. (*Id.* at 46-47).

    d. The $16,354.69 in the S&W Supplies, LLC account on September 2, 2011 belonged to Spiers, with the exception of approximately $1,000 for Wolf's insurance payment. (*Id.* at 113).

6. Spiers also failed to disclose at least seventeen guns in his original bankruptcy schedules. On item #8, Schedule B of Spiers' bankruptcy petition, he listed only a "pistol used for protection" with a value of $200. However, on July 10, 2012, approximately ten months after the filing of his bankruptcy petition, he disclosed, through counsel, that he owned the following firearms at the time of the filing:

    a. Smith & Wesson 686 357 Magnum

    b. Baretta Pistol 96, 40 caliber pistol

    c. Colt Mustang 380 pistol

    d. Ruger LCP 380 pistol

    e. SKB Over/Under, 12 shotgun

    f. Smith & Wesson M&P 15 223 rifle

    g. Smith & Wesson Rifle M&P 15-22 22 rifle

    h. Browning Over/Under, Citori 12

    i. Double Barrel Browning S-By-S 12

    j. Browning Gold Hunter 12

    k. Remington Premier 1187 20 shotgun

    l. Pump action Remington 870 20 shotgun

    m. Remington 1100 12 shotgun

    n. Remington Viper 22 rifle

    o. SKB Over/Under, 885 410 shotgun

    p. Glock 23 40 pistol

    q. SKB Over/Under 12

    r. SKB Over/Under 12

Spiers also recently admitted that he sold one of the guns listed above after the filing of the bankruptcy petition, without approval, although he does not recall which gun he sold.

7. Spiers also owned six Panther's Club Level PSLs at the filing of his bankruptcy. However, in his Statement of Financial Affairs, he stated under oath, "Debtor sold 6 Panther PSLs in May 2011 for $6,000. Used money to live on." (ECF No. 1). In fact, Mr. Spiers only changed the PSL name and never sold the PSLs to anyone.

8. Spiers did disclose in his petition his one-half interest in Across the Border, LLC. However, he described it has having "no value." This representation is false. The Across the Border, LLC bank accounts with Bank of America and South Carolina Bank and Trust contained approximately $44,000 at the time of the filing of the bankruptcy petition. The company appears to have no liabilities. Moreover, Spiers received at least $77,950.84 in post-petition draws from Across the Border, LLC on account of his ownership interest.

9. Spiers also failed to disclose the following items of property owned by him at the time of the filing of his bankruptcy petition: certain jewelry, a gun safe, and sterling silver. In his answer to the Objection to Discharge, Spiers falsely contended that the sterling silver belonged to his ex-wife. These assets belonged to him at the petition date.

10. Spiers also failed to disclose the transfer of a pontoon boat, which

purportedly took place in May of 2011, approximately four months prior to the filing of his bankruptcy petition.

11. Spiers also failed to disclose in his petition that he was owed a debt of $25,000 from his ex-spouse, Melissa Spiers, at the time of the bankruptcy filing. Spiers collected $25,000 from Melissa Spiers post-petition by way of a child support credit and cash, which was not disclosed to the Trustee. He has since dissipated these monies.

12. Finally, the Trustee demonstrated that Spiers failed to produce documents and information requested by the Trustee, including the following:

    a. Record of payment from the sale of the pontoon boat;

    b. Complete business and personal bank records;

    c. MetLife Insurance statement covering the date the petition was filed;

    d. Records related to the foreclosure of his Lake Wateree home;

    e. Records related to the sale of the 2006 Infiniti;

    f. Records related to sale of the 2001 Harley Davidson;

    g. Records relating to South Park Partners, LLC;

    h. 2010 tax returns;

    i. 2011 tax returns.

Spiers, through counsel, has now turned over the records listed above, save and except for the record of payment from the sale of his pontoon boat and the MetLife Insurance statement. However, most of these records were turned over to the Trustee long after they were first requested. In fact, Spiers failed to turn over the requested items for such a long time that the Trustee was forced to issue subpoenas and DMV requests to obtain the records from third parties. This delayed the administration of the estate and

greatly increased its costs.

Over the course of the past several months, Spiers purports to have realized the error of his ways and has since "done the best he could to cooperate" with the Trustee in his administration of the estate. This is true only to a point. Spiers has been sincerely cooperative with the Trustee, but only after the Trustee discovered Spiers' undisclosed assets and transfers. Before this, Spiers was not just non-cooperative, he actively concealed his finances and sizable assets of the bankruptcy estate

## DISCUSSION

As part of the bankruptcy process, 11 U.S.C §521(1) requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs[.]" 28 U.S.C. §1746 provides that bankruptcy petitions and related schedules are filed under the penalty of perjury. It is clear that "debtors have a duty to truthfully answer questions presented in the various schedules and filings carefully, completely and accurately." *In re Casseday*, 2012 WL 2803725, at *5 (Bankr. W.D.N.C. 2012) (*citing In re Famisaran,* 224 B.R. 886, 891 (Bankr. N.D. Ill. 1998)). The debtor is also imposed with a paramount duty to carefully consider all questions included in the Schedules and Statement and see that each is answered accurately and completely." *Id.* Bankruptcy Rule 4002(4) also specifically requires the debtor to "cooperate with the trustee in the preparation of" the complete inventory of the debtor's property required by Rule 2015(a)(1). Fed. R. Bankr. P. 4002(4).

**A. Spiers' discharge should be denied under 11 U.S.C. §727.**

As the Supreme Court has declared, the bankruptcy process is designed "to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh." *Williams v. United States Fidelity & Guaranty Co.,* 236 U.S. 549, 554-55, (1915)). However, "the right of debtors to a fresh start depends upon the honest and forthright invocation of the Code's protections...," and are "inherent in the bargain for the discharge." *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996) (*quoting In re Mascolo,* 505 F.2d 274, 278 (1st Cir. 1974)).

Due to the importance of accurate information, it is no surprise that the Code punishes debtors who attempt to misuse the bankruptcy process. Concealing one's assets in a bankruptcy case, giving a false oath in a petition, and appropriating estate assets can lead to loss of the discharge. *See* § 727(d). Such actions are also crimes. *See* 18 U.S.C. 152, et. seq.

"[B]ankruptcy courts have traditionally drawn upon their powers of equity to prevent abuse of the bankruptcy process...." *In re Casseday,* at *6 (*citing In re Kestell* at 147). §105 is a tool to deal with fraud by debtors and with bad faith petitions. *In re Kestell*, at 149 (plain meaning of Section 105 is that "a court of bankruptcy has authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code" (*quoting In re Walters,* 868 F.2d 665, 669 (4th Cir.1989))).

11 U.S.C. §727(a)(2)-(5) mandates that a Bankruptcy Court deny a discharge when:

> 2. the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has

11

    permitted to be transferred, removed, destroyed, mutilated, or concealed—
        A. property of the debtor, within one year before the date of the filing of the petition; or
        B. property of the estate, after the date of the filing of the petition;
3. the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
4. the debtor knowingly and fraudulently, in or in connection with the case—
    A. made a false oath or account;
    B. presented or used a false claim;
    C. gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
    D. withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
5. the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

As detailed above, Spiers has engaged in conduct that warrants a denial of his discharge under §727. He intentionally failed to disclose numerous assets and transfers of assets he owned or had an interest in at the time of the filing of his bankruptcy petition. He did not produce documents requested by the Trustee. He lied during his 2004 Examination, and he failed to keep accurate records, among other things. Spiers' bad faith in regard to his bankruptcy is not just evident, but rampant. He has intentionally concealed the existence of assets of the bankruptcy estate, transferred other assets without approval and dissipated the proceeds, all to the detriment of his creditors. Only after the Trustee's discovery of numerous undisclosed assets and transfers, did Spiers amend his schedules to list the

previously undisclosed assets and transfers. He has exhibited a total disregard for his disclosure obligations. While the Court is sympathetic to Spiers' divorce and his stated concern for seeing to his children's future, these circumstances do not excuse his misconduct. His conduct has materially prejudiced the Trustee and the bankruptcy estate. Such conduct cannot be rewarded.

Therefore, the Court DENIES Spiers' discharge.

B. **The Trustee is entitled to surcharge Spiers' exempt assets for the amount owed to the estate, $69,853.65. Spiers is entitled to keep the remainder of his exemptions.**

A bankruptcy court may surcharge a debtor's exemptions when reasonably necessary to protect the integrity of the bankruptcy process. *See Latman v. Burdette,* 366 F.3d 774, 786 (9th Cir. 2004). The First Circuit has ruled, "A debtor's fraudulent concealment of non-exempt assets is an exceptional circumstance in which an offsetting surcharge against otherwise exempt property interests is reasonably necessary 'both to protect the integrity of the bankruptcy process and to ensure that a debtor exempts an amount no greater than…the Bankruptcy Code [permits].'" *Malley v. Agin*, 693 F.3d 28, 29 (1st Cir. 2012).

Like the debtors in the *Latman*, and *Malley*, Spiers has both concealed assets and caused the Trustee to incur additional expenses in tracking down and liquidating assets. As a result of the Spiers' actions throughout the bankruptcy case, the estate and the Spiers' creditors have been harmed. The Trustee was required to spend an additional $65,598.50 in attorney's fees and an additional $4,255.14 in expenses for a total of $69,853.65, solely as a result of Spiers' conduct. Spiers must be held accountable financially to his creditors and the bankruptcy estate should be put in back into the

position it would have been had Spiers filed accurate and truthful schedules.

As discussed above, Spiers' bad faith in this case has been rampant. Frankly, his conduct could warrant a loss of his exemptions on a purely punitive basis. However, the purpose of exemptions is to "protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." *In re Morehead*, 283 F.3d 199, 206 (4th Cir. 2002). There is also sound public policy supporting exemptions in assets for the benefit of third parties. It is only due to these reasons that Spiers is entitled to keep the remainder of his exemptions.

The Clerk shall serve a copy of this order on the U.S. Attorney.


**SO ORDERED.**

**This Order has been signed electronically.**　　　　　　**United States Bankruptcy Court**
**The judge's signature and court's seal**
**appear at the top of the Order.**